2008-09053
**FILED**
November 24, 2008
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0001522803

**6 Pages**
WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
DANIEL L. EGAN (SBN 142631)
MEGAN A. LEWIS (SBN 221263)
400 Capitol Mall, Twenty-Second Floor
Sacramento, CA  95814

Telephone:    (916) 441-2430
Facsimile:    (916) 442-6664

Attorneys for Debtor
ALAN CHENEY & ASSOCIATES INSURANCE
SERVICES - MODESTO, INC.

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

MODESTO DIVISION

|  |  |
|---|---|
| In Re:<br><br>ALAN CHENEY & ASSOCIATES INSURANCE SERVICES - MODESTO, INC.,<br><br>Debtor, | Case No.  08-90705 |
| ALAN CHENEY & ASSOCIATES INSURANCE SERVICES - MODESTO, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>BROOKE CREDIT CORPORATION, aka ALERITAS CAPITAL,<br><br>Defendant. | Adversary Case No. 08-09053<br><br>**WFH-12**<br><br>**DATE:  November 19, 2008**<br>**TIME: 10:00 a.m.**<br>**DEPT**:  **D (Sacramento)**<br>**JUDGE: Robert S. Bardwil** |

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

The Court having held a hearing on the Debtor's Motion for Summary Judgment  on

November 19, 2008; appearances having been made by Daniel L. Egan, Wilke, Fleury, Hoffelt,

Gould & Birney, LLP; the Court having reviewed the pleadings and papers on file, and good

RECEIVED
November 21, 2008
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0001522803

cause appearing, the Court now makes the following findings of fact and conclusions of law:

## I.
## <u>FINDINGS OF FACT</u>

**A.    <u>First Cause of Action</u>**

1.      On or after April 28, 2006, Alan Cheney purchased the stock of Unique Dependable Insurance Services, Inc. ("Unique") from Brooke Franchise Corporation (later known as Brooke Capital Corporation.)

2.      In the transaction, Unique  and Plaintiff executed a promissory note (the "Promissory Note") in favor of Aleritas in the approximate amount of $3,000,000.

3.      In connection with the transaction, Plaintiff executed a security agreement (the "Security Agreement") granting Aleritas a lien on all of Unique's assets to secure payment of the Promissory Note.

4.      Plaintiff received no consideration in exchange for incurring the obligations set forth in the Promissory Note.

5.      Plaintiff received no consideration in exchange for granting the liens created by the Security Agreement.

6.      Plaintiff received no consideration in exchange for incurring obligations or granting liens pursuant to any other documents executed in connection with the transaction described in the Promissory Note and Security Agreement.

7.      At all times during and after entering into the transaction described in the Promissory Note and Security Agreement the fair market value of Plaintiff's liabilities exceeded that of its assets.

8.      The fair market value of Unique's assets was not more than $1,050,000  on or around April 28, 2006.

9.      The fair market value of Cheney & Associates Insurance Services, Inc.'s ("ACA Lodi") assets at the time of the April 2006 transaction was not more than $126,334.

10.      The fair market value of Plaintiff's assets at the time of the April 2006 transaction was not more than $ 252,076.

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

398024.1                                              - 2 -

FINDINGS OF FACT AND CONCLUSIONS OF LAW

11.    The fair market value of Alan Cheney's assets at the time of the April 2006 transaction was not more than $ 389,500.

12.    At the time of the April 2006 transaction, Plaintiff's liabilities were at least $3.0 million.

**B.    Second Cause of Action**

1.    On or after April 28, 2006, Alan Cheney purchased the stock of Unique from Brooke Franchise Corporation (later known as Brooke Capital Corporation.)

2.    In the transaction, Plaintiff executed a promissory note (the "Promissory Note") in favor of Aleritas in the approximate amount of $3,000,000.

3.    In connection with the transaction, Plaintiff executed a security agreement granting Aleritas a lien on all of Unique's assets to secure payment of the Promissory Note.

4.    Plaintiff received no consideration in exchange for incurring the obligations set forth in the Promissory Note.

5.    Plaintiff received no consideration in exchange for granting the liens created by the Security Agreement.

6.    Plaintiff received no consideration in exchange for incurring obligations or granting liens pursuant to any other documents executed in connection with the transaction described in the Promissory Note and Security Agreement.

7.    At all times during and after entering into the transaction described in the Promissory Note and Security Agreement the fair market value of Plaintiff's liabilities exceeded that of its assets.

8.    The fair market value of Unique's assets was not more than $1,050,000  on or around April 28, 2006.

9.    The fair market value of ACA Lodi's assets at the time of the April 2006 transaction was not more than $126,334.

10.    The fair market value of Plaintiff's assets at the time of the April 2006 transaction was not more than $ 252,076.

11.    The fair market value of Alan Cheney's assets at the time of the April 2006

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1  transaction was not more than $ 389,500.

2       12.    At the time of the April 2006 transaction, Plaintiff's liabilities were at least $3.0

3  million.

4  **C.**    <u>**Third Cause of Action**</u>

5       1.    On or after April 28, 2006, Alan Cheney purchased the stock of Unique from

6  Brooke Franchise Corporation (later known as Brooke Capital Corporation.).

7       2.    In the transaction, Plaintiff executed a promissory note (the "Promissory Note") in

8  favor of Aleritas in the approximate amount of $3,000,000.

9       3.    In connection with the transaction, Plaintiff executed a security agreement granting

10  Aleritas a lien on all of Plaintiff's assets to secure payment of the Promissory Note.

11       4.    Plaintiff received no consideration in exchange for incurring the obligations set

12  forth in the Promissory Note.

13       5.    Plaintiff received no consideration in exchange for granting the liens created by

14  the Security Agreement.

15       6.    Plaintiff received no consideration in exchange for incurring obligations or

16  granting liens pursuant to any other documents executed in connection with the transaction

17  described in the Promissory Note and Security Agreement.

18       7.    At all times during and after entering into the transaction described in the

19  Promissory Note and Security Agreement the fair market value of Plaintiff's liabilities exceeded

20  that of its assets.

21       8.    The fair market value of Unique's assets was not more than $1,050,000  on or

22  around April 28, 2006.

23       9.    The fair market value of ACA Lodi's assets at the time of the April 2006

24  transaction was not more than $126,334.

25       10.    The fair market value of ACA Plaintiff's assets at the time of the April 2006

26  transaction was not more than $ 252,076.

27       11.    The fair market value of Alan Cheney's assets at the time of the April 2006

28  transaction was not more than $ 389,500.

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

398024.1              - 4 -

FINDINGS OF FACT AND CONCLUSIONS OF LAW

12.     At the time of the April 2006 transaction, Plaintiff's liabilities were at least $3.0 million.

13.     At the time of the April 2006 transaction, Plaintiff had three creditors who were still creditors as of the date of commencement of the Chapter 11 case.

**D.     Sixth Cause of Action**

1.     Claim No. 1 filed by Aleritas is based solely upon the Promissory Note and Security Agreement.

**II.**
**CONCLUSIONS OF LAW**

1.     When Plaintiff executed the Promissory Note and Security Agreement, it made a transfer without receiving reasonably equivalent value. See, Bay Plastics v. BT Commercial Corp., (In re Bay Plastics), 187 B.R. 315, 329-330 (Bankr. C.D. Cal. 1995)); Pajaro Dunes Rental Agency v. Spitters (In re Pajaro Dunes Rental Agency), 174 B.R. 557, 572 (Bankr. N.D. Cal. 1994.)

2.     Plaintiff was insolvent at the time it executed the Promissory Note and Security Agreement.  See 11 U.S.C. § 101(32)(A); In re Ohio Corrugating Co., (1988 BC ND Ohio) 91 BR 430; In re Goodman Industries, Inc., (1982 BC DC Mass) 21 BR 512.

3.     Plaintiff was engaged in business with unreasonably small capital on or around the time of the transfer.

4.     The execution of the Promissory Note and Security Agreement was avoidable under Bankruptcy Code sections 544 and 548.

//

//

//

//

//

//

//

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

398024.1                                            - 5 -
FINDINGS OF FACT AND CONCLUSIONS OF LAW

5.      The Claim of Defendant must be disallowed pursuant to Section 502 of the Bankruptcy Code because once the Promissory Note is avoided, there is no basis under applicable law to assert a claim against the Debtor.

Dated:   November 24, 2008

*Robert Bardwil*

Robert S. Bardwil, Judge
United States Bankruptcy Court

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

398024.1                                           - 6 -

FINDINGS OF FACT AND CONCLUSIONS OF LAW